WELCH, J.
| ^Plaintiff, Michael McGrew, appeals a summary judgment rendered in favor of defendant, Dr. Paul J. Waguespack, dismissing this medical malpractice action with prejudice. We affirm in part, reverse in part, and remand.
BACKGROUND
On July 11, 2012, Mr. McGrew filed a malpractice lawsuit against Dr. Wagues-pack. In the petition, Mr. McGrew alleged that in April 2010, he sought treatment from Dr. Waguespack, who performed back surgery on him. He alleged that Dr. Waguespack was negligent in the following respects: failing to appropriately diagnose, treat, and follow his condition; failing to obtain an adequate medical history and to respond adequately to his available medical history; failing to respond appropriately to available lab results; operating on a patient in an obviously contraindicated physical condition; operating on a patient with diagnosed hepatitis C; negligently removing a stimulator from the area of his spine, which caused him to suffer damage to his spinal nerves; negligently removing blood clots from the area of his spine; failing to utilize available diagnostic and treatment modalities; failing to provide and obtain appropriate informed consent; and any other acts or omissions. Mr. McGrew alleged that as a result of Dr. Waguespack’s negligence, he suffered per *692 manent paralysis to Ms legs, partial paralysis to Ms right arm, and related extreme pain and suffering.[1]
On January 31, 2013, Dr. Waguespack filed a motion for summary judgment, asserting that Mr. McGrew failed to identify an expert witness who would testify that any action or inaction in his treatment of Mr. McGrew breached the standard of care. On April 15, 2013, the trial court denied the motion “for sufficient | ^discovery”. On June 5, 2013, Dr. Wagues-pack filed a notice of the taMng of Dr. Sandra Weitz’s deposition on Wednesday, September 18, 2013.
On July 16, 2013, Dr. Waguespack filed a second motion for summary judgment, again directed to Mr. McGrew’s lack of expert medical testimony to prove that Dr. Waguespack breached the standard of care in his treatment of Mr. McGrew. Dr. Waguespack attached the following evidence to his motion: (1) the court minutes reflecting that his initial motion for summary judgment had been denied for sufficient discovery; (2) the May 23, 2013 letter from Dr. Waguespack’s attorney to Mr. McGrew’s attorney advising of the dates that Dr. Weitz was available for her deposition; (3) the affidavit of Dr. Weitz; and (4) the affidavit of Michelle Hoppe. In the affidavits, Dr. Weitz and/or her employee, Ms. Hoppe, made the following attestations: On June 7, 2013, Dr. Weitz received a subpoena compelling her appearance for a September 18, 2013 deposition by Mang, Bourgeois, L.L.C. Ms. Hoppe contacted Garrett Callaway of Mang, Bourgeois, L.L.C. (Dr. Waguespack’s attorney) to inquire why Dr. Weitz was being subpoenaed to appear for a deposition and learned that Robert Tally (Mr. McGrew’s attorney) had identified Dr. Weitz as someone who had been retained as an expert to testify on Mr. McGrew’s behalf. Dr. Weitz instructed Ms. Hoppe to contact both Ms. Callaway and Mr. Talley and inform them she had not agreed and was not willing to serve as an expert witness on behalf of Mr. McGrew. On June 18, 2013, Dr. Weitz drafted a letter to both attorneys indicating that she had not been retained by Mr. McGrew as an expert witness in this matter and that she did not intend to accept the role as an expert witness. Ms. Hoppe mailed the letter that day.
Dr. Waguespack argued that as the only medical expert ever identified by Mr. McGrew clearly indicated that she had no intention to serve as Mr. McGrew’s expert witness, Mr. McGrew failed to come forward with any evidence sufficient Lto support his claim that Dr. Waguespack failed to meet the standard of care in his treatment of Mr. McGrew. Dr. Waguespack asserted that without evidence in the form of medical testimony, Mr. McGrew could not meet his burden of proof at trial, there is no genuine issue of material fact, and he is entitled to summary judgment as a matter of law.
Thereafter, Dr. Waguespack filed a motion to supplement the motion for summary judgment, attaching thereto a June 5, 2013 letter from Ms. Callaway notifying Mr. Talley of the scheduling of Dr. Weitz’s deposition. In the motion, Dr. Wagues-pack indicated that the May 23, 2013 letter had been inadvertently attached to the motion for summary judgment instead of *693 the intended June 5, 2013 correspondence. The trial court granted the motion to supplement the motion with the exhibit.
In opposition to the motion for summary judgment, Mr. McGrew asked the court to deny the motion on three grounds: (1) there had not been “adequate discovery” as required under C.C.P. art. 966C(1); (2) fairness dictated that Mr. McGrew be allowed sufficient time under La. C.C.P. art. 967C to obtain an expert witness to replace Dr. Weitz; and (3) Dr. Waguespack’s “late” discovery response constituted a waiver of Dr. Waguespack’s right to request summary judgment at this stage of the proceeding. Mr. McGrew argued that Dr. Waguespack’s failure to provide him with a complete copy of his medical records until September 11, 2013, prevented him from going forward with the retention of an expert to replace Dr. Weitz.
Mr. McGrew attached the following evidence to his memorandum in opposition to the motion: (1) a request for production of documents propounded on Dr. Wagues-pack including all of Mr. McGrew’s medical records; (2) a September 11, 2013 letter from Ms. Callaway to Mr. Talley advising that a CD containing the medical records of the NeuroMedical Center and Our Lady of the [ sLake Regional Medical Center was enclosed; and (3) Mr. McGrew’s affidavit.'
In his affidavit, Mr. McGrew made the following attestations: Mr. McGrew suffered from back pain for many years; at the suggestion of his treating physician, Dr. Weitz, he agreed to try a temporary spinal pain stimulator device to alleviate his back pain. Dr. Weitz recommended that Mr. McGrew have the device permanently implanted in his back and referred him to Dr. Waguespack for the procedure. On April 5, 2010, Dr. Waguespack performed a thoracic laminectomy for placement of a spinal cord stimulator on Mr. McGrew. After the surgery, Mr. McGrew experienced “horrible” pain which did not subside; the next morning, Dr. Wagues-pack ordered a CT scan of his back which revealed that blood clots had formed around the implants. Dr. Waguespack rushed Mr. McGrew into surgery to-remove the implants; when Mr. McGrew awoke from the surgery, he was paralyzed in both legs and in his right arm.
Mr. McGrew further attested that Dr. Weitz advised him that mistakes had been made in the surgery, including that the placement or location of the stimulator device had been wrong. Believing that Dr. Weitz would serve as his expert witness in his case against Dr. Waguespack Mr. McGrew conveyed that information to his attorney.[2]
In the affidavit, Mr McGrew objected to the motion for summary judgment for these reasons: On July 11, 2012, he filed the lawsuit and simultaneously filed interrogatories and a request for production of documents on Dr. Waguespack, a copy of which was attached in opposition to the motion for summary judgment as Exhibit A. According to Mr. McGrew, Dr. Wagues-pack did not fully respond to the discovery request until September 11, 2013, when Dr. Waguespack forwarded a disc containing thousands of pages of medical records. Mr. McGrew claimed Rthat Dr. Wagues-pack’s failure to formerly and adequately respond to his discovery requests before seeking summary judgment on July 16, 2013, prejudiced his ability to present facts essential to oppose the motion for summary judgment. He further attested that since discovering Dr. Weitz will not assist *694 him as an expert, he attempted to retain an expert to replace her, but has been informed that he must forward a full and complete copy of his medical records and permit sufficient time to review thousands of pages prior to the rendering of an opinion by the expert. Mr. McGrew also stated that before he can obtain an expert opinion, he must forward a retainer; however, he is a pauper and is attempting to raise the funds to retain a substitute expert. Mr. McGrew requested that the court deny the summary judgment to permit him to retain an expert. Finally, Mr. McGrew asserted that to date, no depositions had been taken and no other discovery had been engaged in, and therefore, “adequate discovery” under La. C.C.P. art. 966C(1) had not yet been had. Mr. McGrew indicated that he was filing the affidavit pursuant to La. C.C.P. art. 967C and requested that the court deny the motion for summary judgment or make such other order as is just pursuant to that provision.
A hearing on the motion for summary judgment was held on October 15, 2013. Mr. McGrew’s attorney continued to maintain that Dr. Weitz was the medical expert and stated that he would subpoena her to testify. The trial court noted that Dr. Weitz had indicated she would not serve as Mr. McGrew’s expert witness and did not intend to accept the role as an expert. The court saw no reason to grant another discovery extension after having previously granted one earlier that year in April. The court granted the motion for summary judgment on the basis that Mr. McGrew did not have medical evidence to support his malpractice claim. On October 30, 2013, the trial court signed a judgment granting Dr. Waguespaek’s motion for summary judgment and dismissing Mr. McGrew’s claims with prejudice.
^DISCUSSION
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Green v. State Farm Mutual Automobile Insurance Company, 2007-0094 (La.App. 1st Cir.11/2/07), 978 So.2d 912, 914, writ denied, 2008-0074 (La.3/7/08), 977 So.2d 917. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for the purposes of the motion for summary judgment show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law, La. C.C.P. art. 966B(2).
The petition alleges that Dr. Wagues-pack committed malpractice by failing to diagnose Mr. McGrew’s condition, in performing spinal surgery on a person with Mr.. McGrew’s condition, and in negligently removing a spinal cord stimulator and blood clots from the area of Mr. McGrew’s spine. To succeed on these claims arising out of the performance of the surgery by Dr. Waguespack, La. R.S. 9:2794 requires Mr. McGrew to prove by a preponderance of the evidence: (1) the standard of care applicable to Dr. Waguespack; (2) violation of that standard of care by the Dr. Waguespack; and (3) a causal connection between Dr. Waguespack’s alleged negligence and the claimed injuries. See Vanner v. Lakewood Quarters Retirement Community, 2012-1828 (La.App. 1st Cir.6/7/13), 120 So.3d 752, 755.
In his petition, Mr. McGrew also alleged that Dr. Waguespack failed to provide and obtain appropriate informed consent. In order to succeed on a claim of malpractice based on the failure to obtain informed consent, Mr. McGrew must prove *695 the following four elements: (1) a material risk existed that was unknown to him; (2) Dr. Waguespack failed to disclose the risk; (3)the disclosure of the risk 18would have led a reasonable patient in his position to reject the medical procedure or choose another course of treatment; and (4) he suffered injury. See Snider v. Louisiana Medical Mutual Insurance, 2013-0579 (La.12/10/13), 130 So.3d 922, 929-30.
The motion for summary judgment attacks Mr. McGrew’s ability to prove that Dr, Waguespack breached the standard of care in his treatment of Mr. McGrew. The only issue the motion raises is whether Mr. McGrew can satisfy his evidentiary burden under La. R.S. 9:2794 in the absence of expert testimony. Dr. Waguespack did not specifically challenge Mr. McGrew’s ability to prove the elements of a malpractice claim based on lack of informed consent to medical treatment. Louisiana Revised Statutes 9:2794 and Louisiana’s Uniform Consent Law[3] create two statutory duties and two different theories for establishing malpractice against a physician. See Gunter v. Plauche, 439 So.2d 437, 440 (La.1983) (suggesting that La. R.S. 9:2794 and Louisiana’s Uniform Consent Law create two statutory duties and two causes of action); Lieux v. Mitchell, 2006-0382 (La.App. 1st Cir.12/28/06), 951 So.2d 307, 317, writ denied, 2007-0905 (La.6/15/07), 958 So.2d 1199 (stating that the Louisiana Supreme Court has recognized that a claim for surgical malpractice and the duty to obtain informed consent are distinct causes of action); Smith v. Lincoln General Hospital, 27,133 (La.App. 2nd Cir.6/21/95), 658 So.2d 256, 261-62, writ denied, 95-1808 (La.10/27/95), 662 So.2d 3 (indicating that lack of skill and failure to obtain informed consent are two theories supporting the medical malpractice cause of action by negligence). Because Dr. Waguespack’s motion for summary judgment did not address Mr. McGrew’s lack of informed consent claim, the trial court erred in granting | ¡¡summary judgment on all theories of liability asserted by Mr. McGrew. See La. C.C.P. art. 966(F), providing that a summary judgment may be granted or affirmed on appeal only as to those issues set forth in the motion under consideration by the trial court; Robertson v. Doug Ashy Building Materials, Inc., 2010-1547 (La.App. 1st Cir.10/4/11), 77 So.3d 323, 336, writ denied, 2011-2468 (La.1/13/12), 77 So.3d 972 (holding that the trial court erred in granting summary judgment on an issue not raised in the defendant’s motion for summary judgment).
We shall limit our review to the issue raised by Dr. Waguespack in his motion for summary judgment, that is, whether Mr. McGrew can satisfy his burden of proving that Dr. Waguespack failed to meet the standard of care in his treatment of Mr. McGrew without expert testimony. As a general rule, expert testimony is required to establish the applicable standard of care and whether that standard of care was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. Pfiffner v. Correa, 94-0924 (La.10/17/94), 643 So.2d 1228, 1234; Vanner, 120 So.3d at 756.
After reviewing the evidence on the motion for summary judgment, we find *696 that this case does not fall within any category of exceptions to the general rule requiring expert testimony to establish the standard of care applicable to Dr. Wagues-pack and a breach of that standard of care. Mr. McGrew has claimed that Dr. Wagues-pack was negligent in the performance of a thoracic laminectomy for placement of a spinal cord stimulator. He has not alleged or offered any evidence suggesting that Dr. Waguespack’s alleged negligence was so obvious or egregious that a lay person could infer negligence without the guidance of expert testimony. Thus, we conclude that expert medical testimony will be required at trial to prove Mr. McGrew’s malpractice claim.
The evidence on the motion for summary judgment demonstrated that the one potential medical expert witness identified by Mr. McGrew will not serve as |10Mr. McGrew’s expert witness and thus will not offer expert testimony regarding the standard of care and breach of that standard of care. Once Mr. McGrew’s lack of proof of expert medical testimony to prove his claim was raised by Dr. Waguespack and supported by the affidavit of Dr. Weitz, the burden shifted to Mr. McGrew to establish that he would be able to satisfy his evidentiary burden at trial. See Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880, 887-88. However, Mr. McGrew clearly failed to do so, Mr. McGrew offered no expert medical evidence setting forth the standard of care applicable to Dr. Wagues-pack or showing that Dr. Waguespack violated any standard of care in his treatment of Mr. McGrew.
Louisiana Code of Civil Procedure article 967C provides that if it appears from the affidavits of a party opposing the motion that for reasons stated he cannot present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment, order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had, or enter any other such order as is just. Mr. McGrew filed an affidavit pursuant to the provision in which he asked the court to refuse the application for summary judgment to permit him time to retain an expert witness. He attested that he has attempted to retain another expert since discovering Dr. Weitz will not assist him as an expert, but was informed he must forward a complete copy of all medical records, which is comprised of thousands of pages. He also stated that he must forward a retainer prior to obtaining an opinion; however, he is a pauper and he is attémpting to raise funds to permit him to retain an expert.
There is no absolute right to delay action on a motion for summary judgment until discovery is complete. Vanderbrook v. Coachmen Industries, Inc., 2001-0809 (La.App. 1st Cir.5/10/02), 818 So.2d 906, 911. Under La. C.C.P. art. 967C, a trial court has discretion to order a continuance to permit affidavits to be | nobtained, depositions to be taken, discovery to be had, or make such other order as is just. Id. In this case, six months before granting the motion for summary judgment, the trial court denied Dr. Waguespack’s motion for summary judgment raising the lack of expert medical evidence for the purpose of allowing the parties to conduct discovery. Further, the record demonstrates that this lawsuit, filed on July 11, 2012, was pending for fifteen months when the motion for summary judgment was heard. Moreover, we note that over three years elapsed between the date of the alleged act of malpractice and the hearing on the motion for summary judgment, yet Mr. McGrew failed to secure expert testimony to support his malpractice claim. Under these circumstances, we find no error in the trial court’s refusal to allow Mr. McGrew addi *697 tional time to retain an expert with respect to that portion of the malpractice claim based on Dr. Waguespack’s alleged breach of the standard of care in his treatment of Mr. McGrew. Therefore, the trial court properly granted summary judgment on Mr. McGrow’s La. R.S. 9:2794 malpractice claim.
CONCLUSION
For the foregoing reasons, the October 30, 2013 summary judgment is affirmed to the extent that it dismissed the malpractice claim based on La, R.S. 9:2794 and reversed to the extent that it dismissed the lack of informed consent claim. The case is remanded to the trial court for proceedings consistent with this opinion. All costs of this appeal are assessed equally to the appellant and appellee.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
KUHN, J., agreeing in part and dissenting in part with reasons assigned.
CRAIN, J., concurs with reasons assigned.
DRAKE, J., agreeing in part, dissents in part for the reasons assigned by Judge KUHN.

. According to Dr. Waguespack, on April 13, 2011, Mr. McGrew filed a request for a medical review panel with the Patient’s Compensation Fund (PCF) pursuant to La. R.S. 40:1299.47; on April 16, 2012, the PCF advised Mr. McGrew's attorney that it had dismissed the claim for failure to appoint an attorney chairman within one year of the filing of the claim. Mr. McGrew acknowledged that the medical review panel was dismissed because no attorney chairman was appointed within one year.

. Dr. Waguespack filed a motion to strike two paragraphs of Mr. McGrew’s affidavit containing alleged statements made to him by Drs. Waguespack and Weitz as constituting inadmissible hearsay.

. Louisiana’s Uniform Consent Law, providing that the only theory on which recovery may be obtained against a physician for failing to disclose risks in a surgical procedure is that of negligence, was previously found in La. R.S. 40:1299.40(E); however that provision was repealed by 2012 La. Acts, No. 759, § 3, and the substance of that provision currently appears in La. R.S. 40:1299.39.5(D). See Snider v. Louisiana Medical Mutual Insurance Company, 130 So.3d 922, 929.